UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Shaun Machipiness, | Case No. 21-CV-1668 (JRT/ECW) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| B. Birkholz and Michael Carvajal, | |
| Respondents. | |

---

This action comes before the Court on Petitioner Shaun Machipiness's Amended and Restated Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Dkt. 11 ("Amended Petition")). For the following reasons, the Court recommends denying the Petition.

## I. BACKGROUND

In July 2015, Machipiness entered into a plea agreement under which he would plead guilty to one count of intentionally conspiring to possess and distribute 500 grams or more of material containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (*See* Machipiness Criminal Dkt. 13 at 2, 11.[1]) In December 2015, the U.S. District Court for the District of North Dakota sentenced Machipiness (as relevant here) to 192 months imprisonment. (*See* Machipiness Criminal Dkt. 23 at 2.) The

---

[1] Citations to the "Machipiness Criminal Docket" concern filings in *United States v. Machipiness*, No. 2:15-CR-0062 (PDW) (D.N.D.).

Federal Bureau of Prisons ("FBOP") is presently confining Machipiness at the Federal Prison Camp in Duluth, Minnesota ("FPC-Duluth"); his projected release date is March 21, 2028.  *See* FBOP, Federal Inmate Locator, *available at* https://www.bop.gov/inmateloc (last accessed Nov. 29, 2021).

The Court received Machipiness's original petition in this case on July 20, 2021.[2] (*See* Dkt. 1.)  On November 5, 2021, the Court received the Amended Petition (*see* Dkt. 11), which is this action's operative petition.[3]

---

[2]   On October 7, 2021, the Court entered an Order denying Machipiness's request to proceed *in forma pauperis* in this action and requiring him to pay this action's filing fee. (*See* Dkt. 9 at 2.)  The Court indicated that if Machipiness did not pay the filing fee, the Court would recommend dismissing this action for failure to prosecute.  (*See id.*)  On October 15, 2021, a third party paid the filing fee on Machipiness's behalf back in July 2021.  (*See* Dkt. 10.)

[3]   Under Rule 1(b) of the Rules Governing § 2254 Cases in the U.S. District Courts (the "§ 2254 Rules"), a district court may apply the § 2254 Rules to "a habeas corpus petition not covered by Rule 1(a)."  So while the Amended Petition arises under 28 U.S.C. § 2241, not § 2254 (*see, e.g.*, Dkt. 11 at 1), the Court can still apply the Rules here.  Under Rule 12 of the § 2254 Rules, "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."  The Court thus can apply the Federal Rules of Civil Procedure (the "FRCP") to this action.

Rule 15(a)(1) of the FRCP states that "[a] party may amend its pleading once as a matter of course" in certain situations.  It is unclear whether the Amended Petition falls into the Rule 15(a)(1) categories.  But the Court need not—so will not—decide the point. Under Rule 15(a)(2) of the FRCP, when Rule 15(a)(1) does not apply, "a party may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires."  To the extent that the Court's permission is needed for the Amended Petition to become this action's operative pleading, that permission is granted.

The Amended Petition invokes the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020) (codified as amended, in relevant part, at scattered sections of 18 U.S.C.). To help understand Machipiness's arguments, the Court will briefly describe here the relevant statutory framework.

The Amended Petition contends that Machipiness should serve the rest of his prison term under home confinement. (*See, e.g.*, Dkt. 11 at 2.) Under 18 U.S.C. § 3621(b), the FBOP "shall designate the place of [a] prisoner's imprisonment." Furthermore, "[t]he [FBOP] may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the [FBOP] . . . that the [FBOP] determines to be appropriate and suitable, considering" various statutory factors. 18 U.S.C. § 3621(b)(1)-(5).

Under 18 U.S.C. § 3624(c)(1),

> [t]he Director of the [FBOP] shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.

Section 3624(c)(2) then discusses the FBOP's ability to place a prisoner into home confinement:

> The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The [FBOP] shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.

The CARES Act, as relevant here, expanded FBOP authority under § 3624(c)(2) by lengthening the permissible home-confinement term. Section 12003(b)(2) of the Act established that:

> During the covered emergency period,[4] if the Attorney General finds that emergency conditions will materially affect the functioning of the [FBOP], the Director of the [FBOP] may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under [18 U.S.C. § 3624(c)], as the Director determines appropriate.

134 Stat. at 516. In April 2020, the Attorney General issued a memorandum that, in relevant part, found that emergency conditions were indeed materially affecting the FBOP's functioning. (*See* Mem. from W.P. Barr to Director of FBOP 1 (Apr. 3, 2020), *available at* https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf (last accessed Nov. 29, 2021).) As of April 2020, then, the Director of the

---

[4] The CARES Act defines "covered emergency period" as "the period beginning on the date on which the President declared a national emergency under the National Emergencies Act . . . with respect to the Coronavirus Disease 2019 (COVID-19) and ending on the date that is 30 days after the date on which the national emergency declaration terminates." CARES Act § 12003(a)(2), 134 Stat. at 516. Then-President Donald J. Trump began the relevant national-emergency period on March 1, 2020. *See* Proclamation 9994 Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, 85 Fed. Reg. 15,337 (Mar. 13, 2020) (applying retroactively). Under 50 U.S.C. § 1622(d), "[a]ny national emergency declared by the President . . . and not otherwise previously terminated, shall terminate on the anniversary of the declaration of that emergency if, within the ninety-day period prior to each anniversary date, the President does not publish in the Federal Register and transmit to the Congress a notice stating that such emergency is to continue in effect after such anniversary." The COVID-19 national emergency thus was to automatically terminate on March 13, 2021. But in February 2021, President Joseph R. Biden, Jr., extended the national emergency period beyond March 1, 2021. *See* Continuation of the National Emergency Declared by Proclamation 9994, 86 Fed. Reg. 11,599 (Feb. 24, 2021). As a result, the "covered emergency period" of CARES Act § 12003(b)(2) is still in effect.

FBOP could lengthen a prisoner's potential home-confinement term past the § 3624(c)(2) limit.

In an earlier memorandum, the Attorney General had already indicated to the FBOP's director that he should "prioritize the use of [his] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." (Mem. from W.P. Barr to Director of FBOP 1 (Mar. 26, 2020) ("March Memorandum"), *available at* https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (last accessed Nov. 30, 2021).) The March Memorandum discussed how to approach FBOP home-confinement decisions, listing various (nonexclusive) factors for officials to consider:

> In assessing which inmates should be granted home confinement pursuant to this Memorandum, you are to consider the totality of circumstances for each individual inmate, the statutory requirements for home confinement, and the following non-exhaustive list of discretionary factors:
>
> - The age and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and Prevention (CDC) guidelines;
>
> - The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;
>
> - The inmate's conduct in prison, with inmates who have engaged in violent or gang-related activity in prison or who have incurred a [FBOP] violation within the last year not receiving priority treatment under this Memorandum;
>
> - The inmate's score under PATTERN, with inmates who have anything above a minimum score not receiving priority treatment under this Memorandum;

- Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her [FBOP] facility;

- The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community. Some offenses, such as sex offenses, will render an inmate ineligible for home detention. Other serious offenses should weigh more heavily against consideration for home detention.

In addition to considering these factors, before granting any inmate discretionary release, the [FBOP] Medical Director, or someone he designates, will, based on CDC guidance, make an assessment of the inmate's risk factors for severe COVID-19 illness, risks of COVID-19 at the inmate's prison facility, as well as the risks of COVID-19 at the location in which the inmate seeks home confinement. We should not grant home confinement to inmates when doing so is likely to increase their risk of contracting COVID-19. You should grant home confinement only when [FBOP] has determined— based on the totality of the circumstances for each individual inmate—that transfer to home confinement is likely not to increase the inmate's risk of contracting COVID-19.

(*Id.* at 1-2.)

With this background, we can better situate Machipiness's arguments. Machipiness alleges that he is "home confinement eligible," and that various factors favor such a placement. (*See, e.g.*, Dkt. 11 at 3-4.) He further asserts that he was "evaluated for home confinement including by [the FBOP's] Central Office review committee and [was] denied *only* for 'Medium PATTERN score' and a minor 'incident report' on 'August 11, 2020' . . . ." (*Id.*) According to Machipiness, his PATTERN score has since been "corrected" to "'low'" and the relevant incident report is now more

than a year old. (*Id.* at 4.) As a result, he contends, FBOP officials should place him into home confinement. (*See, e.g.*, *id.* at 5.)

Under 28 U.S.C. § 2241, in relevant part, "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). As the Court understands the Amended Petition, Machipiness claims that the FBOP's handling of his home-confinement request violates the Constitution and federal law in three ways.

- First, Machipiness points to the U.S. Constitution's Fifth and Fourteenth Amendments, claiming that his "continued detention violates [his] right to equal protection through a deprivation of the core liberty interest in freedom from bodily restraint." (Dkt. 1 at 7.)

- Second, Machipiness claims that his "continued detention is a result of Respondents' [a]buse of statutory authority." (*Id.* at 8.)

- Third, Machipiness claims that his continued detention is unlawful under 5 U.S.C. § 552(a)(1) and § 12003 of the CARES Act. (*See id.* at 9.)

As relief, Machipiness seeks "immediate release from detention at FPC Duluth to placement in home confinement." (*Id.* at 2; *see also id.* at 10 (making similar request).)

## II. ANALYSIS

### A. Equal Protection

The Court will begin with Machipiness's equal-protection argument. As a preliminary point, the Court notes that Machipiness is a federal prisoner challenging federal officials' conduct. (*See, e.g.*, *id.* at 1-2.) His equal-protection claim thus arises under the implicit equal-protection guarantee of the U.S. Constitution's Fifth Amendment. *See, e.g.*, *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 216-18 (1995)

7

(discussing history of equal-protection claims under Fifth and Fourteenth Amendments); *see also United States v. Windsor*, 570 U.S. 744, 774 (2013) (noting same history (citing cases, including *Adarand Constructors*)). As a practical matter, however, courts analyze Fifth Amendment equal-protection claims under the same standards applied to their Fourteenth Amendment counterparts. *See, e.g.*, *Schweiker v. Wilson*, 450 U.S. 221, 227 n.6 (1981) (citing cases); *United States v. White*, 928 F.3d 734, 742 n.9 (8th Cir. 2019) (citing *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975)).

Under the Constitution's equal-protection guarantee, governmental officials generally must treat similarly situated people alike. *See, e.g.*, *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)); *New Doe Child #1 v. United States*, 901 F.3d 1015, 1027 (8th Cir. 2018) (citing *City of Cleburne*). There are two main sorts of equal-protection claims. In the first, "equal protection jurisprudence has typically been concerned with governmental classifications that 'affect some groups of citizens differently than others.'" *Engquist v. Ore. Dep't of Agr.*, 553 U.S. 591, 601 (2008) (quoting *McGowan v. Maryland*, 366 U.S. 420, 425 (1961)); *cf. Roubideaux v. N. Dakota Dep't of Corr. & Rehab.*, 570 F.3d 966, 974 (8th Cir. 2009) (providing example, in case concerning gender-based classification in state rules for housing female prisoners). In this sort of action, "[p]laintiffs . . . generally allege that they have been arbitrarily classified as members of an 'identifiable group,'" then claim that they have experienced unequal treatment because of that association. *Engquist*, 553 U.S. at 601 (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)); *cf. Roubideaux*, 570 F.3d at 974 (providing example).

Machipiness fails to allege this sort of claim. While he notes that he is a member of the Ojibwa (*see* Dkt. 1 at 3), he nowhere alleges differential treatment due to that classification (*see generally id.* at 3-7). And by the Court's read, nothing else in the Amended Petition suggests that Machipiness is a member of some other identifiable group, much less one that allegedly faces unequal treatment. So Machipiness's attack on his custody's validity cannot rest on this first sort of equal-protection claim.

This leaves the second sort of equal-protection claim. The Supreme Court has stated that plaintiffs can "in some circumstances" press an equal-protection claim "even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" *Engquist*, 553 U.S. at 601 (discussing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam)). As the Court explained:

> As we explained long ago, the Fourteenth Amendment "requires that all persons subjected to . . . legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed." When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to ensure that all persons subject to legislation or regulation are indeed being "treated alike, under like circumstances and conditions." Thus, when it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a "rational basis for the difference in treatment."

*Id.* (citations omitted).

In *Higgins Electric, Inc. v. O'Fallon Fire Protection District*, the Eighth Circuit discussed what a plaintiff must allege to plead a plausible class-of-one equal protection claim:

9

> "A class-of-one claim is stated when a plaintiff alleges that a defendant intentionally treated [it] differently from others who are similarly situated and that no rational basis existed for the difference in treatment." To state a class-of-one claim, the "'plaintiff must . . . provide a specific and detailed account of the nature of the preferred treatment of the favored class, especially when the state actors exercise broad discretion to balance a number of legitimate considerations.'"

813 F.3d 1124, 1129 (8th Cir. 2016) (citations omitted; brackets and ellipses in *Higgins Electric*); *see also, e.g.*, *Bruning v. City of Omaha*, 6 F.4th 821, 825 (8th Cir. 2021) (citing cases, including *Higgins Electric*). To be sure, Machipiness suggests that he is being treated differently from similarly situated others. (*See, e.g.*, Dkt. 11 at 8 ("Petitioner is a statutorily home confinement eligible Federal prisoner, like the Federal prisoners nationwide, whom were properly released to home confinement . . . who met the 'criteria' during CARES Act.").) But the Court believes Machipiness has failed to properly plead a class-of-one claim.

Machipiness points to the standards set by the March Memorandum, alleging that under them, his home confinement should be a priority. This claim is mistaken on its face. The March Memorandum dictates that priority consideration should go to inmates whose PATTERN score is "Minimum," and that "inmates who have anything above a minimum score" should not receive priority treatment. (*See* Mar. Mem. 2.) But Machipiness specifically alleges that his PATTERN score—even after being corrected—is "Low," not "Minimum." (*See id.* at 4.) On its face, then, the Amended Complaint fails to allege that Machipiness is bring intentionally treated worse than similarly situated others. To do that, Machipiness must show that BOP officials treated him differently than similarly situated others—in his case, differently than other individuals with a

10

"Low" PATTERN score. The Amended Complaint does not do this at all, much less through the sort of "specific and detailed" account needed to properly allege a class-of-one equal-protection claim.[5]

In summary, Machipiness fails to properly allege an equal-protection claim under either of the two ways to do so. He therefore fails to state an equal-protection claim, so the Court recommends denying the Amended Petition's equal-protection ground.

**B.    Abuse of Discretion**

Machipiness's second argument is that Respondents have abused their statutory authority by refusing to grant him home confinement. (Dkt. 11 at 8-9.) The Court construes the Amended Petition here as claiming simply that Respondents' decision to deny Machipiness home confinement is substantively incorrect under the FBOP's home-confinement standards.[6]

---

[5]    Furthermore, even if Machipiness could show that he had been treated differently from other prisoners with a PATTERN score of "Low," he would also need to show that he was also treated differently from prisoners with a PATTERN score of "Low" who also (at the time of the relevant review) had "incurred a BOP violation within the last year." (*See* Mar. Mem. 2; *cf.* Dkt. 11 at 4 (noting that Machipiness incurred an incident report on Aug. 11, 2020).)

[6]    Certain parts of the discussion of this argument suggest that it is really another attempt to make an equal-protection argument. (*See, e.g.*, Dkt. 11 at 8 ("Respondents are aware that the Constitution and duly enacted CARES Act [and] the Attorney General's prioritization criteria apply equally to all inmates the same yet [Respondents] have wrongfully created and continue to change 'criteria' and have failed to apply the 'criteria' they have created consistently as required.")). To the extent the Amended Petition's abuse-of-discretion argument is really just a rehash of Machipiness's equal-protection claim, the argument fails for the reasons discussed in Section II.A.

This argument's key problem is that this Court lacks jurisdiction over the FBOP's discretionary decisions about prisoner placements. As noted above, the FBOP has the statutory authority to determine where to place prisoners, including whether to place them in home confinement. *See, e.g.*, 18 U.S.C. §§ 3621(b), 3264(c).

Section 3625, in the same statutory subchapter, states that provisions of the Administrative Procedures Act ("APA") "do not apply to the making of any determination, decision, or order under this subchapter." Based on this statutory language, the Eighth Circuit has indicated that the federal courts lack jurisdiction to review the FBOP's placement decisions. *See, e.g.*, *Gatewood v. Outlaw*, 560 F.3d 843, 846 n.2 (8th Cir. 2009); *Martin v. Gerlinski*, 133 F.3d 1076, 1079 (8th Cir. 1998). In other words, while § 3625's wording concerns specific APA provisions, the Eighth Circuit treats § 3625 as depriving courts of jurisdiction more generally. Numerous courts in this District have followed that lead, determining that they lack jurisdiction to review FBOP placement choices. *See, e.g.*, *Williams v. Birkholz*, No. 20-CV-2190 (ECT/LIB), 2021 WL 4155614, at *4 (D. Minn. July 20, 2021), *R. & R. adopted*, 2021 WL 4155013 (D. Minn. Sept. 13, 2021) (citing cases); *Jefferson v. Jett*, No. 15-CV-3308 (PJS/BRT), 2016 WL 4196824, at *2 (D. Minn. July 1, 2016), *R. & R. adopted*, 2016 WL 4186943 (D. Minn. Aug. 8, 2016) (same); *Barakat v. Fisher*, No. 13-CV-1296 (JNE/SER), 2013 WL 6058932, at *10 (D. Minn. Nov. 18, 2013) (same).

That rule straightforwardly blocks Machipiness's abuse-of-discretion argument. The FBOP has the statutory authority to decide whether to place Machipiness into home confinement, and its decision not to do so is generally not reviewable by this Court. The

Court therefore recommends denying this portion of the Amended Petition without prejudice based on a lack of jurisdiction.[7]

### C.     Statutory Violations

The Amended Petition's third argument rests on alleged statutory violations by Respondents.  (*See* Dkt. 11 at 9.)  As the Court reads this argument, Machipiness cites two statutes: (1) 5 U.S.C. § 552(a)(1), and (2) § 12003 of the CARES Act.  (*See id.*)  Neither supports Machipiness's demand for home confinement.

Under 5 U.S.C. § 552(a)(1), federal agencies must make public certain information about (among other things) their "rules of procedure" and "substantive rules of general applicability."  Section 552(a)(1) also states that "[e]xcept to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published."  Machipiness's § 552(a)(1) claim thus seems to be that he has been adversely affected by something that should have been—but was not—published in the Federal Register.  But the Amended Petition nowhere explains just

---

[7]     The FBOP's discretion has limits, of course.  The Court acknowledges that "judicial review remains for any allegations that the [FBOP's] action is contrary to established federal law, violates the Constitution, or exceeds statutory authority." *Ambrose v. Jett*, No. 13-CV-2343 (PJS/JSM), 2013 WL 6058989, at *7 (D. Minn. Nov. 15, 2013) (citing cases, including *Tapia v. United States*, 564 U.S. 319, 331 (2011)).  And so the Court has jurisdiction to address, for instance, Machipiness's claims that the FBOP's handling of his case violated the Constitution's equal-protection guarantees specific federal statutes.  But to the extent that Machipiness merely disagrees with the FBOP's decision not to grant him home confinement, this Court lacks jurisdiction over that claim.

what Machipiness believes was inappropriately left out of the Federal Register.  The Amended Petition thus fails to allege any statutory violation here.

This leaves his claim that officials have violated § 12003 of the CARES Act.  The Court fails to see how.  The only relevant provision of § 12003 states the "During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau *may* lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement . . . , *as the Director determines appropriate*."  CARES Act § 12003(b)(2), 134 Stat. at 516 (emphases added).  As the emphasized wording here shows, this provision contains no mandate that plausibly requires that FBOP officials grant Machipiness home confinement.  And putting the CARES Act itself to the side, while portions of § 3624(c) do use the word "shall," implying certain obligations on the FBOP's behalf, *see, e.g.*, 18 U.S.C. § 3624(c)(1)-(2), the Court does not see—and Machipiness does not explain—how the FBOP's review of his home-confinement request runs afoul of those obligations.

As a result, Machipiness's two attempts to suggest that FBOP officials have violated a statutory provision both fail.  The Court therefore recommends denying the Amended Petition's claim that Respondents' failure to grant Machipiness home confinement comprises some sort of statutory violation.

14

**D.     Summary**

In summary, none of the arguments raised by the Amended Petition justify granting Machipiness's request for home confinement. The Court therefore recommends denying the Amended Petition in its entirety and dismissing this action.

# RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Petitioner Shaun Machipiness's Amended and Restated Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Dkt. 11 ("Amended Petition")) be **DENIED**.

2. This matter be **DISMISSED** without prejudice (for lack of jurisdiction) to the extent Machipiness contends that the Federal Bureau of Prisons' decision to deny him home confinement was substantively incorrect.

3. This matter otherwise be **DISMISSED** with prejudice.


Dated: December 6, 2021                  *s/Elizabeth Cowan Wright*
                                         ELIZABETH COWAN WRIGHT
                                         United States Magistrate Judge


# NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local

15

Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).